UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRED CLEVELAND, JR.,

       Petitioner,

v.                                                    Case No. 3:19cv454-LC-HTC

MARK S. INCH,

       Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

Petitioner, Fred Cleveland, Jr. ("Cleveland"), proceeding *pro se*, filed a petition under 28 U.S.C. § 2254, ECF Doc. 1, challenging his conviction in the First Judicial Circuit Court in Escambia County, Florida.  The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the petition, the State's response (ECF Doc. 11), and Cleveland's reply (ECF Doc. 15), the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

Cleveland was charged on November 1, 2010 in Escambia County case number 2010 CF 4676 with two counts of Lewd and Lascivious Conduct by a person

over eighteen (18) on a person under sixteen (16), a fifteen-year-old female.  ECF Doc. 11-1 at 23.  The charges stemmed from the events occurring the early morning of October 8, 2010.  Cleveland was a friend of the cousin of the victim, S.T., and had spent the evening at her home playing cards and watching football with S.T.'s brother, uncle and cousin.  *Id.* at 189.  S.T. fell asleep in a large chair in the living room, and Cleveland stayed after everyone else had gone to bed.  *Id.*

At around 3:00 a.m., S.T. awoke to find her belt removed, her jeans unzipped, and Cleveland kneeling on the floor in front of her with his hand on her boxer shorts under her jeans.  *Id.* at 191-92.  After S.T. awoke, Cleveland "aggressively" told her to let him perform oral sex on her.  *Id.* at 191.  She refused, left the room, told her mother and aunt about the event, and they contacted the police that night.  Cleveland was eventually charged with one count of lewd and lascivious conduct for fondling her and attempting to remove her clothes while she was asleep and another count for later soliciting her to allow him to perform oral sex on her.  *Id.* at 23.

On January 23, 2011, Cleveland sent the circuit court a letter indicating he wanted to have state-appointed counsel removed and to represent himself.  *Id.* at 34. The circuit court held a hearing on May 9, 2011, and denied the motion, stating "The lines of communication are open between you and [counsel] now.  I'm going to deny your motion.  We'll see how things develop. . . . Later on, if you're still at an impasse, I'll revisit the matter, but right now your motion is denied."  *Id.* at 82.

On the day of jury selection, August 8, 2011, Cleveland claimed he had filed a second request to represent himself the same day as the hearing on his first motion (May 9, 2011) but the court "never even addressed it." *Id.* at 106. The court immediately conducted a *Faretta*[1] inquiry and granted the request for Cleveland to proceed to trial *pro se. Id.* at 114. Cleveland moved for stand-by counsel, which the court denied. *Id.* Cleveland also moved for a continuance, which the court also denied. *Id.* at 115.

The trial was held the next day, August 9, 2011, and the jury found Cleveland guilty on both counts. ECF Doc. 11-1 at 45. He was sentenced right after the verdict was received, without the judge asking him again whether he wanted counsel. *Id.* at 261. He was sentenced to twelve (12) years on each count, to run consecutively to each other and to any other sentence he was serving. *Id.* at 269.

### B.    Postconviction Procedural History and Timeliness

The Secretary admits the petition is timely filed, and the Court agrees. Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one-year limitations of certain "trigger" dates. 28 U.S.C. § 2244(d)(1). For purposes of Cleveland's petition, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review". 28 U.S.C. §

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

2244(d)(1)(A). Additionally, the limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court. *Id.* § 2244(d)(2).

Cleveland did not initially file a timely notice of direct appeal in this case but was granted a belated appeal by the First District Court of Appeal ("First DCA") on September 21, 2012. ECF Doc. 11-1 at 5. That appeal resulted in Cleveland's convictions being affirmed but him being resentenced because the sentencing judge had not again offered appointed counsel before sentencing. ECF Doc. 11-2 at 276; Case No.: 1D12-5228. At resentencing, Cleveland again chose to represent himself, and was re-sentenced to essentially the same penalties. ECF Doc. 11-3 at 18-19 (transcript); ECF Doc 11-2 at 305 (judgment after resentencing, July 30, 2014).

Cleveland filed a direct appeal of the resentencing. ECF Doc. 11-2 at 323; Case No.: 1D14-3978. The First DCA affirmed without written opinion on June 17, 2016. Therefore, Cleveland's conviction became final after the expiration of the 90-day period for Cleveland to file a petition for certiorari with the U.S. Supreme Court expired, September 15, 2016. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002); *The Fla. Star v. B.J.F.*, 530 So. 2d 286, 288 n.3 (Fla. 1988) (holding, in case where the direct appeal was affirmed *per curiam* and without written opinion, the DCA court is the state court of last resort and its decision starts the 90-day clock).

The AEDPA clock ran for seventeen (17) days when Cleveland filed a Rule 3.850 application for postconviction relief in circuit court on October 3, 2016. ECF

Doc. 11-3 at 127. That motion was continuously pending until July 27, 2017 when the First DCA issued its mandate affirming, without written opinion, the denial of the 3.850 motion. ECF Doc. 11-3 at 194; Case No.: 1D17-0126.

The AEDPA clock ran for another days 27 days (for a total of 44 days) when Cleveland filed a habeas petition directly with the Florida Supreme Court on August 24, 2017. ECF Doc. 11-3 at 262. The Florida Supreme Court sent the petition to the circuit court, *id.* at 246, which denied it on January 4, 2018. ECF Doc. 11-4 at 14. Cleveland appealed to the First DCA, which appeal remained pending until the First DCA affirmed without written opinion, *id.* at 142, and issued its mandate on July 13, 2018. *Id.* at 154; Case No.: 1D18-0811.

No further applications for postconviction relief were filed in state court after July 13, 2018,[2] and -- because 44 days had run -- 321 days remained on the AEDPA one-year time limit. Therefore, the petition needed to be filed by May 30, 2019 to be timely. Cleveland filed the federal petition on February 25, 2019.

## II.    DISCUSSION

Cleveland raises four grounds challenging his convictions. For the reasons discussed below, Cleveland is not entitled to relief on any of these grounds.

---

[2] Cleveland filed other state court applications for postconviction relief at other times which are not relevant to the timeliness analysis.

## A.    Ground One: Double Jeopardy

In Ground One, Cleveland argues the convictions on Counts 1 and 2 constituted double jeopardy because they were part of the same, single criminal episode.  ECF Doc. 1 at 7.  Cleveland exhausted this issue by raising it in his 3.850 motion which the circuit court denied with a written opinion on December 19, 2016. Because the First DCA issued a *per curiam* affirmance without written explanation of the denial of that Rule 3.850 motion, this Court will "look through" that decision to the circuit court's written opinion, which is the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The circuit court denied relief because "Defendant was charged and convicted of two counts of lewd or lascivious conduct based on two distinct acts: the act of unbuckling and unzipping S.T.'s pants, and then the separate and distinct act of asking S.T. to engage in sexual activity."  ECF Doc. 11-3 at 161.  The circuit court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

The Double Jeopardy Clause of the United States Constitution protects defendants from (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; or (3) multiple punishments for the same offense.  *Jones v. Thomas,* 491 U.S. 376, 380–81 (1989).

Florida and federal law permit multiple punishments both for offenses committed during different criminal transactions or episodes and for separate offenses committed during one transaction or episode. *Mosley v. Jones*, 2018 WL 6982924, at *3 (11th Cir. Nov. 15, 2018) (citing *Partch v. State*, 43 So. 3d 758, 760-61 (Fla. 1st Dist. Ct. App. 2010); Fla. Stat. § 775.021(4) ("Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively.")).

To determine whether offenses were committed during one or more criminal episodes, a court examines "whether there are multiple victims, whether the offenses occurred in multiple locations, and whether there has been a temporal break between offenses." *State v. Paul,* 934 So. 2d 1167, 1172-73 (Fla. 2006) (quotations omitted) (concluding that sexual offenses committed in the living room and bedroom of victim's apartment were committed during separate criminal episodes), *abrogated in part on other grounds by Valdes v. State,* 3 So. 3d 1067, 1074-77 (Fla. 2009).

"[T]he fact that the same victim is sexually battered in the same manner more than once in a criminal episode by the same defendant does not conclusively prohibit multiple punishments." *Stoddard v. Sec'y, Dep't of Corr.*, 600 F. App'x 696, 704–05 (11th Cir. 2015) (quoting *Saavedra v. State,* 576 So.2d 953, 956, 958 (Fla. Dist. Ct. App. 1991)). Instead, "[t]he key question in such a case is whether 'the defendant

had time to pause, reflect, and form a new criminal intent between the occurrences.'"
*Stoddard*, 600 F. App'x at 705 (quoting *Eaddy v. State,* 789 So.2d 1093, 1095 (Fla. 4th DCA 2001)).

Under these standards, Cleveland was not given multiple punishments for the same offense. As the circuit court correctly concluded, Cleveland was convicted for violating Florida Statutes §800.04(6)(a)[3] twice, based on separate acts.

Cleveland first violated subsection (a)(1) of the statute by touching S.T. in a lewd and lascivious manner – removing her belt, unzipping her jeans and attempting to remove her underwear. Then, after she awoke and confronted him, he had the chance to form a new criminal intent and violated this statute a second time by soliciting her to commit a lewd and lascivious act – engaging in oral sex – in violation of subsection (a)(2) of the statute. These are two separate acts, each of which separately violate the statute. *See Stoddard*, 600 F. App'x at 705. Therefore, Cleveland is not entitled to relief on his Double Jeopardy claim.

---

[3] That statute provides as follows:
      LEWD OR LASCIVIOUS CONDUCT.—
    (a)   A person who:
        1.   Intentionally touches a person under 16 years of age in a lewd or lascivious manner; or
        2.   Solicits a person under 16 years of age to commit a lewd or lascivious act commits lewd or lascivious conduct.

### B. Ground Two: Insufficiency of the Evidence and *Giglio* violation Regarding Count 1

Cleveland argues the only evidence supporting his conviction on Count 1 was false, and its use a violation of *Giglio*, because S.T., the only witness to the incidents at issue, admitted she had been asleep when the conduct occurred. Therefore, Cleveland argues, it was a manifest injustice to allow him to be convicted on such insufficient evidence.

Cleveland exhausted this issue by raising it on direct appeal and in a 3.850 motion. ECF Doc. 11 at 20-21. However, neither the First DCA nor the circuit court issued a written opinion specifically addressing why it denied relief on this ground. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Cleveland has not met that burden. Notably, Cleveland's characterization of S.T.'s testimony as "false" is belied by the testimony at trial. At trial, S.T. testified she had fallen asleep on a chair in the living room and was awakened in the middle of the night with only her and "Fred" Cleveland in the room. She testified when she woke, she felt "funny" because her "belt and stuff was like unbuckled and [her] pants was unzipped." ECF Doc. 11-1 at 190-91. When asked what Cleveland was doing when S.T. awoke, she testified he was "on the floor" and "his hands was kind of by

[her] boxer shorts." She also testified her belt was on and her pants zipped when she went to bed and she had not undone them. *Id.* at 195.

On cross-examination, Cleveland asked, "Did you see Mr. Cleveland unbutton your pants?" and she answered, "When I woke, my pants was unbuttoned. Your hand was down there. Who else is going to unbutton them? Not me." *Id.* at 202. Cleveland then asked, "Any you didn't feel anyone tug on your belt buckle?" and she answered, "You – you. That's why I woke up because of you. Yep. I have no reason to sit up on here and lie on you." *Id.* at 203.

There is nothing false about S.T.'s testimony. Although she was asleep when Cleveland undid her clothes, the events she testified to were what occurred when she woke up. Therefore, there can be no *Giglio* error because to succeed on a *Giglio* challenge, the defendant must demonstrate the prosecutor "knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Dickerson,* 248 F.3d 1036, 1041 (11th Cir. 2001), *cert. denied,* 536 U.S. 957 (2001) (quotations omitted). Cleveland provides no evidence S.T. perjured herself on the stand.

Second, as the Secretary argues, S.T.'s testimony as well as those of her family members, provided sufficient circumstantial evidence to support the convictions. S.T.'s brother testified S.T. appeared scared when he saw her, and S.T. told her Cleveland had touched her. ECF Doc. 11-1 at 179. S.T.'s aunt testified that S.T. called her around 4 am that morning and told her what happened and named the

perpetrator as "Fred." *Id.* at 205-06. Also, S.T.'s mother testified that she was awakened in the middle of the night by S.T., who was scared to say anything because "he was still in the house", referring to Petitioner. *Id.* at 166-67. After Petitioner left, S.T. told her what happened with Petitioner, and the mother called law enforcement. *Id.* at 167.

When a defendant seeks federal habeas corpus relief on the ground that his or her conviction is based on insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted, emphasis in original). Similarly, "Where ... a criminal defendant moves for a judgment of acquittal in a case based on entirely on circumstantial evidence, the trial court is required to determine whether the evidence would support a jury's conclusion that all reasonable hypotheses of innocence have been excluded." *Warren v. State*, 475 So. 2d 1027, 1030 (Fla. Dist. Ct. App. 1985). Also, "federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). (citing *Jackson*, 443 U.S. at 326; *Wilcox v. Ford*, 813 F .2d 1140, 1146 (11th Cir. 1987)).

The jury was entitled to credit the testimony of S.T. over Cleveland's testimony. S.T. admitted she was asleep but was awakened by Cleveland unbuckling her belt and unzipping her pants. When she awoke, Cleveland was on the floor in

front of her with his hand on her private parts and immediately solicited her with an offer of oral sex. She immediately reported the episode to her aunt and mother, who testified that S.T. seemed to be shaken and upset by the incident, as did her brother. A rational trier of fact could easily find the essential elements of the crime of lewd and lascivious conduct based on this evidence. Cleveland is therefore not entitled to habeas relief on this ground.

**C.    Ground Three: Trial Court Error Based on *Faretta* Hearing and Failure to Continue Case**

Cleveland argues the trial court denied him due process by failing to conduct a timely and proper *Faretta* hearing, ECF Doc. 1 at 11, and also for failing to grant a continuance on the day of trial. The Secretary admits Cleveland exhausted this claim by raising it on direct appeal. ECF Doc. 11 at 29. Although the First DCA issued a written opinion in affirming Cleveland's judgment of conviction, the opinion did not include a written explanation for the rejection of this particular claim. ECF Doc. 11-2 at 276-77 (First DCA opinion stating, "We affirm the first issue without further comment."). Thus, because there is no state court opinion providing a written explanation of the holding, as with ground 2, Cleveland must show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. The undersigned finds Cleveland fails to meet that burden.

As an initial matter, Cleveland's claim that a "second 'demand' for self-representation styled motion was filed May 9, 2011, the same day the first hearing

was denied" is not supported by the record. A review of the state online docket shows no such motion or letter was docketed. *See* attached copy of docket sheet. Instead, the record shows that after Cleveland's demand for self-representation was denied on May 9, 2011, he did not raise the issue of self-representation again until the day of jury selection. ECF Doc. 11-1 at 106.

As stated above, at that point the state court held a *Faretta* hearing to address this second request, this time granting Cleveland's request to represent himself. Cleveland then moved for a continuance of the trial, which the court denied. "In reviewing a petition for a writ of habeas corpus, a federal court will not disturb a state trial court's denial of a motion for a continuance unless 'the trial court's actions were so arbitrary as to result in the denial of due process.'" *Roundtree v. Inch*, 2020 WL 8458863, at *6–7 (S.D. Fla. Nov. 25, 2020), *report and recommendation adopted*, 2021 WL 266280 (S.D. Fla. Jan. 27, 2021) (citing *Alderman v. Zant*, 22 F.3d 1541, 1558 (11th Cir. 1994)).

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel ... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981) (To warrant habeas corpus relief, the trial court's denial of a continuance must "have been so arbitrary and

fundamentally unfair that it violates the constitutional principles of due process."). Cleveland, however, has not shown the denial of the continuance was arbitrary and fundamentally unfair.

Cleveland told the court he was prepared for trial long before August 9, 2011. As the Secretary points out, in a January 23, 2011, letter to the judge, Cleveland expressed dissatisfaction with his counsel and, furthermore, objected to future continuances. ECF Doc. 11 at 30. Also, at the May 9, 2011 hearing on Cleveland's request to represent himself, he told the state court he had asked trial counsel not to move for continuances in because he wanted the matter resolved as quickly as possible. ECF Doc. 11-1 at 77. Appellant complained that trial counsel was trying to track down witnesses for him when he did not have any witnesses that would be helpful. *Id.* He also admitted, "I mean, there is no extenuating circumstances in this case that this case should even have transgressed this far. It should have already been taken to trial." *Id.* at 78.

Additionally, Cleveland's statements in court on August 8, 2011, when he was arguing for the right to represent himself, indicate he had been preparing to represent himself at trial before he was even granted that right. He told the court he had been reading up on trial procedure and thought that he could do an adequate job. *Id.* at 108. He also stated he had some knowledge of the rules of evidence. *Id.* Thus, Cleveland had clearly been preparing to represent himself at trial in advance of the Court allowing him to do so.

Finally, other than wanting to present a diagram to show the layout of the house, *id.* at 108-09, Cleveland does not indicate how he was prejudiced by the denial of a continuance. Instead, he asserts in purely conclusory fashion he was denied "an adequate time-frame to prepare for trial." ECF Doc. 1 at 11. Such a speculative claim is insufficient to warrant habeas relief. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (noting that "mere speculation that the defendant was prejudiced by trial error" is insufficient to warrant federal habeas relief; instead, "the court must find that the defendant was actually prejudiced by the error."). Thus, Cleveland is not entitled to habeas relief on this claim.

To the extent Cleveland argues the *Faretta* hearing was insufficient, his claim is without merit. Under the Sixth Amendment, as applied to the States through the Fourteenth Amendment, a criminal defendant has "the right to counsel at all 'critical stages' of a criminal prosecution." *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998). On the other hand, a criminal defendant also has a constitutional right to self-representation if he so chooses. *Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 798–99 (11th Cir. 2020) (citing *Faretta*, 422 U.S. at 806). A request to proceed *pro se* and a waiver of the right to assistance of counsel, however, must be "knowingly and intelligently" made. *Id.* at 835.

*Faretta* provides that when a defendant requests to discharge counsel and to proceed *pro se*, a trial court should conduct an inquiry and make the defendant "aware of the dangers and disadvantages of self-representation, so that the record ...

establish[es] that '[the defendant] knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)).

The trial court met the requirements of *Faretta* in this case. The trial court specifically discussed with Cleveland that the court was making the *Faretta* inquiry, and Cleveland indicated he was familiar with *Faretta* and its requirements. ECF Doc. 11-1 at 108-09. Cleveland clearly asserted a desire to represent himself both at the May 9, 2011 hearing and on August 8, 2011. The trial judge questioned him and determined Cleveland was competent to do so based on Cleveland's representations he had been diligently researching and preparing the case and had represented himself *pro se* in other cases. ECF Doc. 11-1 at 106-109. The trial court then made Cleveland aware of the charges and maximum penalties against him, *id.* at 111, and the dangers and disadvantages of *pro se* representation. *Id.* at 114. The trial court also expressly cautioned Cleveland it was not advisable for a defendant to proceed without a lawyer, comparing it to treating himself rather than using a doctor when he had a serious medical condition. *Id.* at 113.

Despite the court's warnings, Cleveland remained steadfast in his desire to proceed *pro se*. *Compare Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 799 (11th Cir. 2020) (finding *Faretta* inquiry adequate under similar circumstances). Therefore, the trial court properly determined Cleveland "knowingly and

voluntarily" waived his right to appointed counsel, *see Adams*, 317 U.S. at 279, and Cleveland is not entitled to habeas relief on this ground.[4]

### D.    Ground Four: Ineffective Assistance of Appellate Counsel ("IAAC") Claims

Cleveland argues his appellate counsel was ineffective for failing to raise three arguments:  the issues in grounds one and two above (double jeopardy and insufficiency of the evidence on Count 1) and whether forty (40) points were improperly added to his sentencing scoresheet for sexual contact[5].  ECF Doc. 1 at 13.  Cleveland exhausted the IAAC claims relating to the issues in grounds one and two by raising them in a petition alleging IAAC, filed on April 27, 2015 directly with the First DCA.  ECF Doc. 11-3 at 93; Case No.: 1D15-1994.

The First DCA denied the IAAC petition on the merits without written explanation.  Thus, Cleveland must show that no reasonable basis exists for the denial.  *Harrington*, 562 U.S. at 98 (2011).  Cleveland fails to meet that burden.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*."  *Philmore v. McNeil,* 575

---

[4] Moreover, although "[t]he ideal method of assuring a voluntary waiver is for the trial judge to conduct a pre-trial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation," *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991)), "[t]he failure to hold a *Faretta* hearing is not error as a matter of law.  If the trial record shows a defendant knowingly and voluntarily elected to represent himself, the *Faretta* standard will be satisfied."  *Id.* (quotations omitted).

[5] The scoresheet used for the first sentencing is located at ECF Doc. 11-1 at 50, and the one for the second sentencing is at ECF Doc. 11-2 at 303.  Section III on each form, titled "Victim Injury", contains the 40 points added for "Sex Contact."

F.3d 1251, 1264 (11th Cir. 2009) (per curiam) (citing *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991)); *see also Smith v. Robbins,* 528 U.S. 259, 285 (2000). Under the first prong, Cleveland must show that his direct appellate counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Under *Strickland*'s second prong, Cleveland must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This inquiry requires the Court to consider "the merits of the omitted claim," *Philmore,* 575 F.3d at 1264–65, and the court will find counsel's performance prejudicial if "the neglected claim would have a reasonable probability of success on appeal," *Heath,* 941 F.2d at 1132; *Brooks v. Comm'r, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013).

As discussed above, grounds one and two are without legal merit. Thus, Cleveland cannot show he was prejudiced by counsel's failure to raise them on appeal because, even had counsel raised them, there is not a reasonable probability of a different outcome. Indeed, it is well settled that counsel cannot be ineffective for failing to present a meritless argument. *See e.g., Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (explaining that counsel cannot be deficient for failing to raise a meritless claim).

As to the third claim of error – that appellate counsel was ineffective for failing to raise a claim that the points were added improperly for sexual contact – this claim was not properly exhausted because Cleveland did not include it as part of his IAAC petition with the First DCA. ECF Doc. 11-3 at 93-103.

Issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. *See Anderson v. Harless*, 459 U.S. 4 (1982); *see also Hutchings v. Wainwright*, 715 F.2d 512 (11th Cir. 1983). "In Florida, claims concerning representation received by appellate counsel are properly brought by way of a petition for habeas corpus relief to the appropriate district court of appeal." *Felipe v. Inch*, 2020 WL 8262418, at *5 (S.D. Fla. Dec. 10, 2020), *report and recommendation adopted*, 2021 WL 243734 (S.D. Fla. Jan. 25, 2021) (citing *State v. District Court of Appeal, First District*, 569 So. 2d 439, 442 n.1 (Fla. 1990) ("Of course claims of ineffective assistance of appellate counsel shall continue to be raised by petition for habeas corpus filed in the appellate court.")); *see also* Fla. R. App. P. 9.141(d)(3)("Petitions alleging ineffective assistance of appellate counsel shall be filed in the court to which the appeal was taken.").

Additionally, Cleveland cannot now return to state court to file a petition raising this IAAC claim. *See* Fla. R. App. P. 9.141(d)(5) ("A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it

alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.").

As noted above, Cleveland's conviction became final on September 15, 2016, more than two years before he filed his federal petition. Therefore, the claim is procedurally defaulted and cannot be considered here absent Cleveland demonstrating cause and prejudice or a fundamental miscarriage of injustice, which he has not attempted to argue. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Although a procedural default is enough to bar relief on this claim, the Court notes for the sake of completeness that this claim also fails on the merits. In his June 22, 2016 Rule 3.800 motion, Cleveland raised a similar argument and the circuit court denied relief because regardless of whether the 40 points were added to the scoresheet, the court could have imposed the same sentence where each conviction carried with it a maximum penalty of 15 years' imprisonment. ECF Doc. 11-3 at 175-76, 181-82.

The circuit court's determination is not contrary to law. Indeed, the Florida Supreme Court in *Brooks v. State*, 969 So. 2d 238 (Fla. 2007) explicitly held, "if the trial court could have imposed the same sentence using a correct scoresheet, any error was harmless." *Brooks*, 969 So. 2d at 243. Therefore, Cleveland cannot show the likelihood of a different outcome if appellate counsel had raised this argument on appeal. As stated above, counsel cannot be deficient for raising a meritless claim; nor can such failure result in prejudice. *Owen v. Sec'y, Dep't of Corrs.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating that failure to raise a meritless claim cannot constitute ineffective assistance). Thus, Cleveland is not entitled to habeas relief on this ground.

## III.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk is directed to docket as an exhibit to this Report and Recommendation, the docket sheet in Escambia County Circuit Court case 2010 CF 4676.

Additionally, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Cleveland*, 2010 CF 4676, in the First Judicial Circuit, in and for Escambia County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 23rd day of March, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.